IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RICHARD DOUGLAS REINERT, JR., <br><br> Petitioner, <br><br> vs. <br><br> BRIAN GOOTKIN, PETE BLUDWORTH, <br><br> Respondents. | Cause No. CV 21-74-BLG-SPW <br><br> ORDER |

Through counsel, Penelope Strong, Petitioner Reinert ("Reinert") filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court conviction. (Doc. 1.) Subsequently, out of state counsel, Eric Nelson, appeared pro hac vice. (*See* Docs. 3 & 4.) Counsel then submitted a "pretrial memorandum" in support of the petition. (Doc. 5.)

The State was directed to respond. (Doc. 6.) The State complied, filing its Answer and exhibits in support. (*See* Docs. 12; 12-1 to 12-56.) The State generally alleges the claims contained within Reinert's petition are both procedurally defaulted without excuse and lack merit.

1

In response, Reinert does not argue he can demonstrate cause or prejudice to excuse the default of his claims, instead he contends that the ineffective assistance of counsel claims he presents to this court are the substantial equivalent to those presented to the state courts and, therefore, they are not procedurally defaulted. (Doc. 17 at 7-10.) Reinert asserts he should be granted relief on the merits of his claims. *Id.* at 10-22.

For the reasons set forth below, the petition for writ of habeas corpus will be denied and dismissed.

I.  **Factual History**

The following facts were outlined by the Montana Supreme Court on direct appeal:

> Richard Douglas Reinert (Reinert) killed Jessica Stephenson (Jessica) at 11:30 p.m. on December 21, 2013, inside his home. Reinert discharged nine bullets, with at least six bullets striking Jessica in the upper chest and head. Earlier that evening Jessica went to Reinert's home to meet up with her friend, Danielle, Reinert's wife. The three began drinking alcohol and then attended the Billings rodeo, where they continued to drink. After the rodeo, they continued to drink at a local bar. Surveillance recordings of that night showed Reinert outside the bar, slipping on the ice, and at one point laying in the road requiring assistance. Jessica drove them all home around 11:00 p.m. Before they arrived home, Reinert jumped out of Jessica's vehicle, injuring himself, and then reluctantly returned to the vehicle. At the Reinert residence, Reinert and Danielle engaged in a violent verbal and physical domestic dispute. At some point Jessica went into the home to help.
>
> Danielle and Reinert testified that Reinert had made himself a drink

and used a bread knife to slice a lime. Reinert was walking around with the knife, he and Jessica fought over it, and eventually Danielle took the knife from Reinert, slicing her palm in the process. She was afraid of Reinert's conduct that evening, so she began hiding their home defense guns. Danielle testified that Reinert and Jessica got into a physical fight where they were both on the floor and kicking, punching, hair pulling, and screaming at each other. Danielle testified that Reinert retrieved a revolver. Danielle managed to take the revolver and went into the bathroom to hide it. Reinert then retreated to the master bedroom. While in the bathroom Danielle heard the gun shots.

Reinert testified that when he retreated to the master bedroom, he obtained a pistol from his bed. Jessica then came into or was already in the master bedroom, moving quickly towards him, with something in her hand. When surprised, Reinert shot nine bullets and killed Jessica. Immediately prior to her death, Jessica had been on the phone with 911 for approximately one and a half minutes, reporting the domestic dispute. The call to 911 recorded Jessica prior to the shooting, the shooting itself, and the aftermath.

The 911 recording reveals that, immediately after the shooting Danielle started screaming. Reinert shouted at her "you made me f**king shoot her," "you made me f**king do this because of you," "you made me do this," and "you are the one that made me kill her." The couple's domestic dispute continued. The police arrived shortly thereafter and found Reinert struggling with Danielle. He was on top of her in the hallway outside of the master bedroom. The revolver was found underneath Danielle. Jessica was pronounced dead at the scene.

Reinert and Danielle were transported to the Billing Police Department. In jail, when informed by police that he could not see his wife because they were investigating, Reinert asked "investigating what?" During the police interview that day Reinert admitted to shooting Jessica and causing her death, yet told police "I've done nothing wrong" because he was scared for his life and justified in his use of force.

At trial, the State presented testimony of Dr. Thomas Bennett, the

forensic pathologist who conducted the autopsy on Jessica. Dr. Bennett testified regarding his findings, described where Jessica was standing when she was shot, and how many bullets struck her. The jury heard the 911 call placed by Jessica just a minute before her death. They listened to a crying woman report a domestic dispute, that her friend's husband was so drunk he was pointing a gun at his own head, and the sudden firing of nine shots. The jurors heard Danielle screaming and Reinert saying he killed Jessica because of Danielle. Physical evidence showed that Jessica was standing about three feet away from Reinert and was on the phone when he shot her. The lead detective testified that Reinert's assertion that he acted in self-defense was not supported by the evidence.

Reinert testified on his own behalf. Reinert testified he believed Jessica was coming at him with something in her hand. He shot her because of his fear of serious bodily injury or death. Pursuant to his justifiable use of force theory, Reinert testified he was a peaceful man and introduced evidence that he was trustworthy and truthful. He testified to a specific instance where another man wanted to fight him and instead of fighting, Reinert filed for a restraining order. Reinert testified that he was not someone who was quick to get into physical confrontations with others and that he had never been violent towards his wife. A previous instance of him punching through their bathroom door was an attempt to protect his wife who had fallen in the locked bathroom. Reinert reiterated that he told the police he had "done nothing wrong," because when he shot his gun he believed he was in danger of serious bodily injury or death.

The State was allowed to introduce, on cross-examination, a 2011 police report that Reinert filed after a night of drinking. The State argued the police report was false and went directly to Reinert's assertion of his truthfulness and that he was trustworthy.

*State v. Reinert*, 2018 MT 111, ¶¶ 3-10, 391 Mont. 263, 419 P.3d 662 (*Reinert I*).

//

4

## II. Procedural History

On March 6, 2015, a jury in Montana's Thirteenth Judicial District, Yellowstone County, found Reinert guilty of deliberate homicide. (*See* Verdict Doc. 12-19.) Reinert filed a motion for a new trial arguing that the State withheld favorable impeachment evidence regarding Dr. Bennett. On August 4, 2015, the state district court denied Reinert's motion for a new trial. (Doc. 12-20.) On August 13, 2015, the district court sentenced Reinert to 100 years in the Montana State Prison for the deliberate homicide with a consecutive 10-year sentence for use of a weapon. (*See* Judg. Doc. 12-26.) Written judgment was entered on September 11, 2015. *Id.*

Reinert, through counsel, timely filed a direct appeal. (Doc. 12-33.) He argued (1) the district court erred when it denied his motion for a new trial, based upon the State withholding *Brady* material[1] in relation to the forensic pathologists expert testimony, and (2) the district court abused its discretion when it allowed the State to elicit testimony of a prior bad act to rebut the contention that Reinert was justified in his use of deadly force. *Id.* On May 8, 2018, the Montana Supreme Court affirmed Reinert's conviction and sentence. *See Reinert I*; (*see also* Doc.

---

[1] In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Court held that "suppression by the prosecution of evidence favorable to an accused…violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution."

5

12-37.) On June 19, 2018, the Montana Supreme Court denied Reinert's petition for rehearing. (Doc. 12-40.)

On September 7, 2018, Reinert filed a pro se petition for postconviction relief ("PCR") in the state district court. (Doc. 12-42.) He subsequently filed a brief in support. (Doc. 12-44.) Reinert generally alleged: (1) the State failed to disclose material evidence, (2) ineffective assistance of trial counsel, (3) ineffective assistance of appellate counsel,[2] (4) judicial abuse of discretion, (5) prosecutorial misconduct, (6) gross miscarriage of justice, and (7) cumulative error. *Id.*

On November 13, 2019, the state district court denied Reinert's PCR petition. (Doc. 12-48.) It found he failed to state a claim upon which relief could be granted. Specifically, the district court determined Reinert's claims surrounding the state's failure to disclose material evidence, the trial court's abuse of discretion, and the state's prosecutorial misconduct claims were procedurally barred. The court further determined that Reinert failed to establish judicial misconduct by Chief Justice McGrath, or that trial counsel or appellate counsel rendered ineffective assistance of counsel. *Id.*

---

[2] The ineffective assistance of trial and appellate counsel claims are discussed in further detail below.

6

Reinert appealed. (Doc. 12-49.) On appeal, he argued the postconviction court erred when it denied his petition without an evidentiary hearing. The Montana Supreme Court affirmed the lower court. *Reinert v. State*, 2020 MT 226N, 401 Mont. 557, 2020 WL 5362011 (*Reinert II*); (*see also* Doc. 12-53). The Court determined Reinert should have raised the record-based claims on direct appeal. The Court further found that even if Reinert was able to establish deficient performance on the part of either trial or appellate counsel, he could not prove prejudice due to the overwhelming evidence that was presented against him. *Id.* at 7.

### III.  Reinert's Claims

Before this Court, Reinert alleges both trial and appellate counsel provided ineffective assistance. In Ground I, Reinert claims trial counsel performed deficiently by: (a) failing to object to certain parts of testimony, including the 911 call and the police officers' interpretation of the call; (b) asking an open-ended question of Detective Tucker; (c) failing to investigate the 2011 Florida incident; and, (d) failing to call an expert who could testify regarding the effects of intoxication. (See, Doc. 1 at 5; 22-25.)[3]

---

[3] In his "pretrial memorandum" Reinert primarily focuses on the second subsection of his IAC of trial counsel claim, that counsel erred when he asked Detective Tucker why he believed Reinert shot Jessica. See, (Doc. 5 at 5-8; 10; 12-18; 24-37.)

7

Reinert claims in Ground II of his petition that appellate counsel provided ineffective assistance by: (a) failing to raise the aforementioned IAC of trial counsel claims on appeal, thus preventing Reinert from raising them in his PCR petition, in addition to committing (b) other "cumulative errors." *Id.* at 7, 26. As Respondents point out, Reinert does not specify the nature of the "cumulative errors," but notes that they include unspecified *Brady* violations, unspecified hearsay objections by the State that were sustained regarding "alleged threats made by the decedent" to Reinert, and unspecified comments by the State seemingly vouching for the credibility of witnesses. *Id.* at 22-25; 26-27.[4]

Reinert does not specify the relief he seeks from this Court. *Id.* at 15.

### IV. Exhaustion/Procedural Default Analysis

A state prisoner must exhaust his state court remedies before petitioning for a writ of habeas corpus in federal court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Federal courts may not grant a writ of habeas corpus brought by an individual in custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A). "The exhaustion-of-state-remedies doctrine, now codified at 28 U.S.C. §§ 2254(b) and (c), reflects a policy of federal-state comity, an accommodation of our federal

---

[4] See also, (Doc. 12 at 12-13.)

8

system designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citation omitted).

To meet the exhaustion requirement, a petitioner must (1) use the "remedies available," § 2254(b)(1)(A), through the state's established procedures for appellate review, *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); (2) describe "the federal legal theory on which his claim is based," *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008); and (3) describe "the operative facts . . . necessary to give application to the constitutional principle upon which the petitioner relies," *id.* See also *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). A petitioner must meet all three prongs of the test in one proceeding. "Mere 'general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,' do not establish exhaustion." *Castillo v. McFadden*, 399 F. 3d 993, 999, cert. denied, 546 U.S. 818 (2005). If a habeas petitioner failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and, therefore, are not eligible for federal habeas review. See, *Casey v. Moore*, 386 F. 3d 896, 916-18 (9th Cir. 2004).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule or failed to raise his claim at the state

level. *Peterson v. Lampert,* 319 F.3d 1153, 1156 (9th Cir.2003)(citing *O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45, 848 (1999)). *See also Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Similarly, if a federal constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. *Coleman,* 501 U.S. at 729–30. *See also Bennett v. Mueller,* 322 F.3d 573, 580 (9th Cir.), *cert. denied,* 540 U.S. 938 (2003). Generally, petitioners are barred from asserting such claims in a federal habeas proceeding. *See Gray,* 518 U.S. at 162; see also, *Shinn v. Martinez Ramirez,* 596 U.S. __, 142 S. Ct. 1718, 1727 (2022). Such claims will be deemed procedurally defaulted unless the petitioner can demonstrate a basis to excuse the default. *Cooper v. Neven,* 641 F. 3d 322, 327 (9th Cir. 2011).

    The procedural default may be overcome if certain circumstances are met. An exception to the procedural default rule applies when a petitioner is able to show that there is "cause" for the failure to comply with the state procedural rule and "prejudice" arising from the default, or that the failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750. To establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To establish a "fundamental

miscarriage of justice," a petitioner must demonstrate "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Wood v. Ryan*, 693 F. 3d 1104, 117-18 (9th Cir. 2012)(internal quotation omitted). A claim of actual innocence is rarely met and must be based on reliable evidence not presented at trial. *Casey v. Moore*, 386 F. 3d at 921 n. 27.

But as set forth above, Reinert does not address any circumstance which would excuse a procedural default. Instead he asserts the claims he presents to this Court are not procedurally defaulted because they are "substantially similar" to the IAC claims raised before the state courts. Accordingly, this Court's analysis focuses on exactly what IAC claims Reinert presented in his PCR petition and appeal therefrom.

Reinert acknowledges he presented 15 claims of ineffective assistance of trial counsel claims in his PCR petition. (*See e.g.*, Doc. 1 at 20.) The Court agrees, a review of Reinert's PCR petition reveals IAC claims based upon trial counsel's failure to:

(1) object to character evidence stemming from the 2011 Florida incident based upon a constitutional confrontation violation, (Doc. 12-42 at 17-24);
(2) object to State's investigation and loss of critical evidence including the knife, Reinert's injuries, and lack of blood alcohol testing; *id.* at 24-31;
(3) object to *Miranda* violations,[5] *id.* at 31-32;

---

[5] In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court addressed the Fifth Amendment privilege against self-incrimination and held, "the prosecution may not use statements that stem from a custodial interrogation of a defendant unless the defendant is

11

(4) object to State's use of an interview video in which Reinert appeared in handcuffs, *id.* at 32;
(5) object to prosecutor's closing argument characterizing Reinert as "dishonest," *id.* at 32-35;
(6) object to certain jury instructions, *id.* at 35-40;
(7) to move to exclude Reinert's wife from testifying, *id.* at 40-41;
(8) to move to suppress the 911 call, *id.* at 41;
(9) object to the poor quality of the surveillance video obtained from the local bar, *id.* at 41-42;
(10) seek a change of venue, *id.* at 42-43;
(11) inform trial court of potential juror misconduct based upon the alleged use of social media, *id.* at 43-44;
(12) recuse himself based upon a purported conflict of interest, *id.* at 44-45;
(13) object to trial court allowing charges absent indictment by a grand jury, *id.* at 45-48;
(14) object to the State's use of emotion while reading text messages, *id.* at 48-49; and,
(15) object to phone call recordings used at sentencing in violation of *Brady*. *Id.* at 49-50.

In his PCR proceedings, Reinert also claimed that appellate counsel provided ineffective assistance by: (1) failing to raise the above trial counsel IAC claims on appeal, (2) failing to raise a "cumulative error test" or file supplemental authority on appeal, and (3) failing to request Chief Justice McGrath recuse himself from sitting on Reinert's direct appeal. See, *Id.* at 51-55; see also, (Doc. 1 at 20-21.)

//

---

warned, prior to questioning, that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney."

### i. Ground I(a)

Reinert alleges trial counsel was ineffective for failing to object to certain parts of the testimony, including the 911 call and the police officers' interpretation of the call. While Reinert did present a claim to the district court in his PCR petition that trial counsel should have filed a motion to exclude the 911 call "long before trial began" (see Doc. 12-42 at 41), he did not exhaust the specific claim that he now makes before this Court. In his PCR petition he did not challenge Counsel's failure to object to the admission of the call during trial or the officers' testimony relative to the call during trial.

"As a general matter, each 'unrelated alleged instance of counsel's ineffectiveness' is a separate claim for purposes of exhaustion." *Gulbrandson v. Ryan*, 738 F. 3d 976, 992 (9th Cir. 2013)(*quoting Moorman v. Schriro*, 426 F. 3d 1044, 1056 (9th Cir. 2005). And, as set forth above, exhaustion requires a petitioner to fairly present each claim to the state court in a procedurally appropriate manner. *Baldwin*, 541 U.S. at 29. "[A] petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) through the entire direct appellate process of the state, or (2) throughout one entire judicial post-conviction process available in the state." *Casey*, 386 F. 3d at 916 (citations omitted).

Accordingly, the claim that trial counsel was ineffective for failing to make objections to the 911 call and the officers' testimony at trial is unexhausted

because Reinert failed to properly present this specific claim in his PCR petition and appeal therefrom. See e.g., *Castillo v. McFadden*, 399 F. 3d 993, 998 (9th Cir. 2004)(To properly exhaust a claim a petitioner must give the state court "a fair opportunity to act on his federal claim before presenting it to the federal courts.") This claim is unexhausted and procedurally defaulted without excuse.

### ii. Ground I(b)

Reinert primarily focuses his argument before this Court on his claim that trial counsel performed deficiently by asking an open-ended question of Detective Tucker on cross-examination of why he thought Jessica was shot and killed. But as set forth above, despite Reinert's protestations to the contrary, this precise IAC claim was not one of the 15 claims presented in either his PCR petition or in the appeal. Simply because some IAC claims are exhausted, does not mean that all possible IAC claims are exhausted. These new allegations of IAC, that were not previously presented to the state court, cannot now be addressed on federal habeas review. *See Moorman*, 426 F. 3d at 1056-57. This claim is also unexhausted and procedurally defaulted. Because there is no basis to excuse the default, this claim will also be denied.

### iii. Ground I(c)

Reinert argues that trial counsel failed to adequately investigate the 2011 Florida incident and that on re-cross examination he elicited more of Reinert's

thought process without a legitimate trial strategy for so doing. (See Doc. 1 at 24.) Again, this is not the same claim that Reinert presented to the state courts. In his PCR petition, Reinert claimed that counsel performed deficiently when he failed to object to character evidence stemming from the Florida incident based upon a purported violation of *Crawford v. Washington,* 541 U.S. 36 (2004).[6] (Doc. 12-42 at 17- 24.) Thus, Reinert's claim IAC made to the state courts asserting a *Crawford* violation in relation to the testimony surrounding the "Florida incident" is different than the one he attempts to assert now regarding a purported failure to investigate and IAC allegedly committed on re-cross examination. Reinert is not asserting the same set of operative facts or applicable law, thus the claims are distinct. *Moorman*, 426 F. 3d at 1056-57. This claim, too, is unexhausted and procedurally defaulted.

### iv.  Ground I(d)

Finally, Reinert claims trial counsel was ineffective for failing to call an expert who could testify regarding the effects of intoxication. There was no claim made in the state courts regarding counsel's failure to obtain expert testimony of any kind. Because Reinert failed to raise this claim entirely, it is unexhausted and now procedurally defaulted. *See Baldwin*, 541 U.S. at 29.

---

[6] *Crawford* held that if a hearsay statement is testimonial, the statement's admission implicates the defendant's Sixth Amendment confrontation rights and is only admissible if the declarant is unavailable and if the defendant had a prior opportunity to cross-examine the declarant.

15

### v. Ground II- appellate counsel

For the same reason his ineffective assistance of trial counsel claims fail, so do Reinert's ineffective assistance of appellate counsel claims. He did not present the same claims in his PCR proceedings that he now presents to this Court. As set forth above, each unrelated alleged instance of counsel's ineffectiveness is a separate claim for purposes of exhaustion. *Gulbrandson*, 738 F. 3d 992. Thus, none of Reinert's IAC of appellate counsel claims are properly exhausted and at this juncture they are now procedurally defaulted.

### vi. Conclusion

Reinert seems to argue in his briefing that simply because he presented Sixth Amendment claims raising a federal question to the state courts in his PCR proceedings, he adequately presented claims substantially similar to his present claims for purposes of this Court's review under Section 2254. As explained herein, Reinert is mistaken. "[I]neffective assistance claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline explanation of the facts relating to an ineffective assistance claim." *Hemmerle v. Schriro*, 495 F. 3d 1069, 1075 (9th Cir. 2007). The substance of the ineffective assistance claims Reinert presents to this court, including not only the federal law, but also a statement of the factual basis which would tend to support relief, were not fairly

16

presented to the state courts. Thus, all of the claims Reinert presents to this Court are procedurally defaulted without excuse.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Reinert has not made a substantial showing that he was deprived of a federal constitutional right. His IAC claims are procedurally defaulted without excuse. Accordingly, there are no close questions and reasonable jurists would find no basis to encourage further proceedings. A certificate of appealability is denied.

Based on the foregoing, the Court enters the following:

17

## ORDER

1. Reinert's Petition (Doc. 1) is DENIED and dismissed with prejudice.

2. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is DENIED.

DATED this 21st day of October, 2022.

Susan P. Watters
United States District Court Judge